## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

MELODY TERRY,                              )
                                           )
     Plaintiff,              )
                                           )
v.                                         )    Civil Action No. 3:06CV268–HEH
                                           )
SGT. ROBERT MCCALL,                        )
                                           )
     Defendant.              )

### MEMORANDUM OPINION
### (Granting in Part Defendant's Motion for Summary Judgment)

This civil rights action arises from the search of Plaintiff Melody Terry's

apartment, the seizure of sexually explicit photographs, and her subsequent arrest by

Defendant, Sergeant Robert McCall ("Sgt. McCall") with the Chase City Police

Department ("CCPD").  The matter is presently before the Court on Defendant's Motion

for Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil

Procedure.[1]  Both sides have filed memoranda with attached exhibits supporting their

respective position.  Because the facts and legal contentions are adequately presented in

the materials before the Court and argument would not aid in the decisional process, the

Court will dispense with oral argument.

---

[1]By order dated May 30, 2006, the Court limited preliminary discovery to the issue of
Defendant's assertion of qualified immunity.

## I. Background

The Complaint in this case, which was removed from the Mecklenburg County Circuit Court, appears to present four separate claims. Count I contends that Sgt. McCall, maliciously and without probable cause, instituted a criminal charge against Plaintiff. Count II asserts a state law claim for conversion of property from Plaintiff's residence during the execution of a search warrant. Counts III and IV, in essence, allege that Sgt. McCall's actions in "seizing [Plaintiff's] person and property, depriving her of liberty, and subjecting her to prosecution without probable cause" violated Plaintiff's constitutional rights. (Compl. 4.)

With respect to the constitutional claims, Sgt. McCall argues that he is entitled to qualified immunity. Sgt. McCall further contends that summary judgment is appropriate as to the common law torts because there are no material facts in dispute, and he is entitled to judgment as a matter of law. The dispositive facts in this case do not appear to be in dispute.

In 2003 and early 2004, Sgt. McCall was assigned to investigate a series of burglaries and robberies occurring in the Chase City, Virginia area. Based on information supplied by confidential informants and descriptions provided by victims, Sgt. McCall began to focus his investigation on Deron Davis ("Davis"), who resided at that time with Plaintiff. Sgt. McCall's investigation also disclosed that on at least one occasion, Plaintiff had visited one of the victim's homes and solicited money several days prior to a

home invasion style robbery.  Moreover, a female of similar description to Plaintiff was observed leaving the scene of that robbery driving a vehicle resembling that of Plaintiff's vehicle.  Each of the robberies and home invasions occurred within close proximity of Plaintiff's residence.  On several occasions, police dogs tracked the scent of the perpetrator from the crime scene to Plaintiff's apartment complex.  In each instance, the physical description of the assailant was consistent with that of Davis.

Interviews of Plaintiff conducted by Sgt. McCall confirmed that Davis owned clothing consistent with that worn during the robberies.  Moreover, a confidential informant of known reliability advised the CCPD that Plaintiff had disclosed to the informant that Davis was involved in at least one of the robberies under investigation by Sgt. McCall.  Because of the level of violence associated with Davis's suspected criminal activity, Sgt. McCall felt compelled to take action.

On February 5, 2004, Sgt. McCall presented the results of his investigation to Magistrate Robert L. Walker, III ("Magistrate Walker"), a duly appointed magistrate for Mecklenburg County, Virginia.[2]  According to Defendant's Brief in Support of Motion for Summary Judgment, Sgt. McCall spent approximately two and one-half hours outlining the information he had gathered concerning the criminal activity of Davis, the roommate of Plaintiff.  (McCall Aff. ¶ 8.)  In addition to the oral presentation, Sgt. McCall submitted affidavits to Magistrate Walker supporting search warrants for the

_____

[2]Chase City is a township within the County of Mecklenburg, Virginia.

home of Hattie Davis, the mother of Davis, Plaintiff's apartment, and any vehicle

registered in Plaintiff's name.  According to Sgt. McCall, he did not ask for any specific

arrest warrant for Plaintiff.  (McCall Aff. ¶ 10.)  He simply presented the facts to the

judicial officer.

Following Sgt. McCall's presentation, Magistrate Walker issued nine arrest

warrants against Davis arising out of a robbery occurring on January 29, 2004, an arrest

warrant charging Plaintiff with conspiracy to commit the January 29 robbery, and search

warrants for the residences of Hattie Davis and Plaintiff.

Later the same day, Sgt. McCall, accompanied by a team of officers from the

CCPD, executed the warrants.  Sgt. McCall was also accompanied by Sergeant Harvey

Hoyle ("Sgt. Hoyle"), another Chase City officer.  The team arrived at Plaintiff's

apartment at approximately 8:00 p.m. that evening.  Initially, there was no one present

when the officers began the search.  As the principal investigator on the case, Sgt. McCall

was responsible for the collection and packaging of all items seized from Plaintiff's

apartment.  During the course of the search, Sgt. McCall observed Sgt. Hoyle and another

officer examining sexually explicit photographs of a black female.  After inspecting the

photographs, Sgt. McCall returned the photographs to Sgt. Hoyle.  According to Sgt.

McCall, he had no intention at that point of seizing the photographs.  However, shortly

thereafter, Sgt. McCall observed Sgt. Hoyle placing the photographs in the pocket of his

pants.  Believing Sgt. Hoyle's apparent misappropriation of the photographs to be in

violation of CCPD policy, Sgt. McCall took custody of the photographs, over Sgt. Hoyle's objection.  (McCall Aff. ¶ 13.)

Sgt. McCall recorded the seized photographs in his search inventory and properly noted their seizure on the return.  The photographs were secured in a non-clear evidence bag and stored at CCPD headquarters pursuant to CCPD policy.  As required by Virginia law, Sgt. McCall filed his search warrant return with the Mecklenburg County Circuit Court clerk's office reflecting the seizure of the photographs.  (McCall Aff. ¶ 15; McCall Dep. Tr. 84–86.)

Sgt. McCall immediately advised Chief Job Jordan ("Chief Jordan") of the CCPD of the apparent inappropriate actions of Sgt. Hoyle.  Sgt. McCall and the Chief discussed the identity of the individual depicted in the photographs.  Still uncertain of the person's identity, Sgt. McCall displayed the photographs to Plaintiff, who was then confined in a holding cell.  Plaintiff acknowledged that she was the person in the photographs.  Sgt. McCall then replaced the photographs in the evidence envelope and secured them in a property locker as dictated by CCPD policy.

On March 14, 2004, Sgt. McCall removed the photographs from his locker and returned them to Plaintiff.  According to Sgt. McCall, between February 5, 2004 and March 14, 2004, no one except him examined the photographs, which were never "copied, published, posted or disseminated."  (McCall Aff. ¶15; McCall Dep. Tr. 87–88.)

Plaintiff adamantly denies any involvement in the January 29 robbery.  On

April 12, 2004, a preliminary hearing on the charges against Plaintiff was conducted by

the Mecklenburg County General District Court.  Prior to the introduction of evidence,

the court dismissed the charges against Plaintiff.  This lawsuit followed.

The Complaint in this case is comprised of two distinct groups of causes of action.

Counts I and II plead common law torts, namely malicious prosecution and conversion of

the photographs.  Counts III and IV, as best as can be discerned, plead violations of the

Civil Rights Act.  Because the Court limited the scope of discovery, Defendant's motion

will be limited to his entitlement to qualified immunity.

## II. Analysis

Under the doctrine of qualified immunity, police officers performing discretionary

duties "are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person

would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Absent a genuine

issue of material fact as to "[w]hether the conduct allegedly violative of the right actually

occurred," the question of qualified immunity should be decided at the summary

judgment stage.  *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

The analytical framework to be used in determining a defendant's entitlement to

qualified immunity is now well established.  The analysis must be conducted in two steps,

which must be undertaken in the appropriate sequence.  *See Saucier v. Katz*, 533 U.S.

194, 200 (2001).  Initially, the Court must determine whether, "[t]aken in the light most

favorable to the party asserting the injury . . . the facts alleged show the officer's conduct

violated a constitutional right." *Id.* at 201.  If Plaintiff cannot surmount this hurdle, the

analysis ends and the defendant is entitled to qualified immunity. *Id.*

If the Court finds, however, that the officer's conduct violated a constitutional

right, then the next sequential step is to ask whether the right was clearly established at

the time of the events at issue. *Id.*  This inquiry must be made "in light of the specific

context of the case, not as a broad general proposition." *Id*.  If the right was not clearly

established in the specific context of the case—that is, if it was not "clear to a reasonable

officer" that the conduct in which he allegedly engaged "was unlawful in the situation he

confronted"—then the law affords the officer immunity from suit. *Clem v. Corbeau*, 284

F.3d 543, 549 (4th Cir. 2002) (internal quotations omitted).

Qualified immunity protects law enforcement officers from "bad guesses in gray

areas" and ensures that they are liable only "for transgressing bright lines." *Maciariello*

*v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).  Summary judgment on the basis of

qualified immunity is proper, notwithstanding factual disputes, if those disputes do not

call into question the reasonableness of an officer's perceptions. *Gooden v. Howard*

*County*, 954 F.2d 960, 965–66 (4th Cir. 1992) (en banc).  The scope of qualified

immunity is broad, providing "ample protection to all but the plainly incompetent or those

who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The principles underlying Plaintiff's constitutional claims, which form the basis of this Court's Article III jurisdiction, were well settled and clearly established at the time of the alleged violation.  The requirement that arrests and searches conducted by government agents be predicated on probable cause is firmly rooted in the Fourth Amendment of the United States Constitution.  *See Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001); *Katz v. United States*, 389 U.S. 347, 357 (1967).  It is equally well established that the Fourth Amendment governs both state and federal actors.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

### A.    Fourth Amendment Claims

The requirements that a law enforcement officer have probable cause before making an arrest, and that a reviewing judicial officer find probable cause before issuing an arrest warrant, are well-settled hornbook law.  *See Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996).  Indeed, they are among the basic tenets of criminal jurisprudence.  These constitutional rights were clearly established on February 5, 2004.

The central issue with respect to Plaintiff's arrest is therefore whether a reasonable person in Sgt. McCall's position would have thought his actions violated that right.  The reasonableness of his actions does not turn on whether probable cause was present.  *Id*.

When an officer acts pursuant to a warrant, as in this case, the core inquiry is whether the officer could have reasonably thought there was probable cause to pursue an arrest warrant.  *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).  The arresting

officer is deprived of qualified immunity only if "the warrant application is so lacking in

indicia of probable cause as to render official belief in its existence unreasonable."

*Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).[3]  "In other words, an officer is not denied

qualified immunity for making a mistake, as long as that mistake is reasonable under the

circumstances."  *Smith*, 101 F.3d at 356.  The officer's subjective state of mind is

irrelevant.  *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994).

With respect to Count III, Plaintiff's Civil Rights claim focuses on the alleged

absence of probable cause for the issuance of the warrant for her arrest.  Notwithstanding

Magistrate Walker's finding of probable cause, Plaintiff contends that Sgt. McCall could

not have reasonably thought there was an adequate basis to seek a warrant for her arrest

for conspiracy to commit robbery.  Specifically, she argues that the information gathered

through Sgt. McCall's investigation failed to demonstrate that Plaintiff had prior

knowledge that a robbery would occur, or that she was party to an agreement to commit

such an offense.

According to the undisputed portions of Sgt. McCall's affidavit, he spent

approximately two and one-half hours outlining the results of his investigation to

Magistrate Walker.  Sgt. McCall denies requesting a warrant for any specific charge

against Plaintiff.  (McCall Aff. ¶ 8.)  Although the resulting arrest warrant alleges, in

pertinent part, that on or about January 29, 2004, Plaintiff did conspire, confederate or

---

[3]The contents of Sgt. McCall's representation to Magistrate Walker are undisputed in
Plaintiff's pleading.

combine with another to commit robbery, in violation of § 18.2-22 of the Code of

Virginia, Sgt. McCall's presentation was much more expansive.  In order to place the

events in context, Sgt. McCall had to describe the series of armed robberies and assaults

in which Plaintiff's roommate, Davis, had been implicated.  The historical information

also provided an arguable associative link between Davis's activities and certain acts of

Plaintiff.

For example, with respect to the robbery of an elderly couple on December 30,

2003, in a neighboring jurisdiction, Sgt. McCall's investigation revealed that Plaintiff had

previously been employed by the victims and had "visited them at their home two or three

days prior to the robberies and asked for money."  (McCall Aff. ¶ 4.)  Shortly after the

robbery occurred, a female matching Plaintiff's description was seen leaving the area in a

vehicle matching Plaintiff's vehicle.  (McCall Aff. ¶ 4.)  Sgt. McCall further informed

Magistrate Walker that a reliable confidential source told Chief Jordan that Davis had

used Plaintiff's vehicle to go to the victim's home, where he forced entry, pistol whipped

the couple, and stole money from them.  *Id*.

Sgt. McCall also advised Magistrate Walker that several weeks prior to the

December 30, 2003 robbery, an individual named Pete Craig ("Craig") was robbed and

beaten in his residence in Mecklenburg County.  Craig's home was approximately two-

tenths of a mile from Plaintiff's apartment.  A confidential source of known reliability

advised Chief Jordan that after committing the robbery of Craig, Davis changed his

clothes at Plaintiff's apartment.  Moreover, the site where the robbery occurred was

muddy, and boot prints were visible at the scene.  Sgt. Hoyle later observed Davis being

driven away from her apartment complex by a person resembling Plaintiff.  Sgt. Hoyle

noted that Davis was not wearing muddy boots at that time.  *Id*.

According to his affidavit, Sgt. McCall questioned Plaintiff after the December 30,

2003 robbery.  Plaintiff advised Sgt. McCall that, after the crime occurred, Davis came to

her apartment wearing bloodstained pants.  Davis put the clothes in a duffle bag and told

Plaintiff he was leaving for New Jersey.  *Id*.

The January 29, 2004 robbery, which formed the basis of the arrest warrant for

Plaintiff, occurred approximately two-tenths of a mile from her apartment at 10:00 p.m.

It was perpetrated by a black male matching Davis' physical description wearing black

clothing, a stocking cap, and face mask.  The victims, employees of a local Chinese

restaurant, were accosted and robbed at gunpoint.  A police K-9 unit tracked the scent of

the assailant to the entrance of Plaintiff's apartment complex.  The investigating officers

detected impressions of what they recognized as Timberland boots on a direct path

between the crime scene and Plaintiff's apartment.  Along that same path they discovered

a stocking cap and face mask.

Sgt. McCall informed Magistrate Walker that two hours after the January 29

robbery, he interviewed Plaintiff at her apartment.  According to Sgt. McCall's affidavit,

Plaintiff informed him that Davis had left her apartment between 10:00 p.m. and 10:30

p.m. that evening wearing Timberland boots and dark clothing.  With Plaintiff's consent, Sgt. McCall took custody of a pair of wet black jogging pants, a dark blue jacket, and blue jeans from her apartment.  Information received from a confidential informant later the same day collaborated Davis's involvement in the robbery.  *Id.*

Although the evidence presented to Magistrate Walker was obviously shallow with respect to Plaintiff, it is important to keep in mind that Sgt. McCall followed the teachings of the United States Supreme Court by presenting his facts to a magistrate rather than acting precipitously.  *See United States v. Ventresca*, 380 U.S. 102, 105–106 (1965).  Plaintiff is correct that the finding of probable cause by the magistrate does not per se shield Sgt. McCall from liability.  The determinative question, however, is not whether probable cause existed, or whether Sgt. McCall was mistaken in his belief that the evidence was sufficient to implicate Plaintiff.  In the final analysis, to deny Sgt. McCall the protection of qualified immunity, this Court must conclude that, despite a contrary finding by a judicial officer, no reasonable police officer would have believed there was probable cause to support an arrest warrant for Plaintiff.  The record in this case does not warrant such conclusion.

In weighing the information provided to the magistrate, there are several illuminating principles guiding the examination.  First, the agreement underlying the crime of conspiracy need not be a formal contract.  It is a combination or confederation with a common criminal objective.  *See Floyd v. Commonwealth*, 219 Va. 575, 581, 249

S.E.2d 171, 174–75 (1978).   Common law principles of agency govern the relationship

between the various conspirators.  Each co-actor is responsible for the acts of the others

where the crime committed was an incidental probable consequence of a concert of

actions.  *See Carter v. Commonwealth*, 232 Va. 122, 125–27, 348 S.E.2d 265, 267–68

(1986).  Based on the historical information presented by Sgt. McCall, there was a

reasonable inference that Plaintiff was aware that Davis was involved in a number of

armed robberies.  If Plaintiff knowingly provided Davis with a safe sanctuary to hide his

clothing and evade capture, she may conceivably have abetted his criminal activity

sufficiently to become a co-conspirator.  *See United States v. Roberts*, 881 F.2d 95, 101

(4th Cir. 1989).

Even if the extent of Plaintiff's complicity was legally short of a co-conspirator, it

unquestionably fulfills the requirements of an accessory after the fact.  The undisputed

information supplied by Sgt. McCall to the magistrate revealed that Plaintiff provided aid

and comfort to Davis.  Again, the historical information raised a reasonable inference that

Plaintiff was aware of Davis' criminal activity and that her assistance enabled him to

escape or delay capture.  Therefore, even if a reasonable person could not conclude that

Plaintiff was aware of the robberies prior to their occurrence, the information provided to

the magistrate was certainly sufficient to raise an inference that she was aware at the time

he sought refuge and concealed his clothing at her apartment.  *See Manley v.*

*Commonwealth*, 222 Va. 642, 645 (1981).

The Court is of the opinion that reasonable minds could differ as to whether there was probable cause for Plaintiff's arrest.  Therefore, a reasonable police officer could conclude that Magistrate Walker had a legal basis to issue a valid warrant in this case.

Turning next to Plaintiff's second Civil Rights claim, the determinative inquiry is whether or not Sgt. McCall legally seized the sexually explicit photographs.  Because the objects to be seized under the warrant did not include such photographs, the legality of their seizure is governed by the plain view doctrine enunciated in *Horton v. California*, 496 U.S. 128 (1990).  To justify a plain view seizure, Sgt. McCall must first demonstrate that he "did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id*. at 136.  This requirement is ordinarily satisfied if the officer is on the premises pursuant to a validly issued search warrant. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).  The legality of the search warrant is not at issue in this case.

Second, the seizing officer must show that he had a lawful right of access to the evidence itself. *Horton*, 496 U.S. at 137.  Lastly, the incriminating character of the evidence seized must be immediately apparent. *Id.* at 136–37.  To establish the incriminating character of an item, the police must show that based upon an examination of what is exposed to their view, they are able to determine that it is evidence or contraband. *See Arizona v. Hicks*, 480 U.S. 321, 328 (1987).  The United States Court of Appeals for the Fourth Circuit has interpreted readily apparent incriminating character to

14

mean that the seizing agents had probable cause to believe that the item was evidence of a crime at the time of the seizure. *See United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996).

Therefore, Defendant's entitlement to qualified immunity on Count IV turns on whether a reasonable police officer under the circumstances at hand would have believed that there was probable cause to seize the sexually explicit photographs. The inquiry is an objective one, dependent not on the subjective perception of the particular officer at the scene, but instead on what a hypothetical officer would have thought in those circumstances. *Milstead v. Kibler*, 243 F.3d 157, 161 (4th Cir. 2001), *cert. denied*, 122 S. Ct. 1599 (2001). "So long as the officer's actions, viewed from the prospective of the officer at the time, can be seen within the range of reasonableness, then no liability will attach." *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir. 1995) (en banc) (citing *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991)), *cert. denied*, 516 U.S. 994 (1995).

The undisputed facts disclosed that Sgt. McCall seized the photographs when he observed another officer placing them in his rear pocket. What Sgt. McCall observed was at best a violation of police policy and at worst a possible attempted larceny. The photographs constituted physical evidence of those potential improprieties. According to Sgt. McCall's affidavit, he sealed the photos in an evidence envelope, discussed them with the police chief, displayed them to Plaintiff, and later placed them in a secured police evidence locker. Approximately thirty days later, they were returned to Plaintiff.

Plaintiff's contention that the photographs were circulated among police officers and viewed for their sexual gratification is unsupported by any admissible evidence.

While seizure of the photographs may not have been the wisest course of action, when viewed from the perspective of the officer at the time, this Court finds that Sgt. McCall's actions were neither outside the range of reason, nor rose to the level of a constitutional violation.

For the foregoing reasons, this Court finds that Sgt. McCall is entitled to qualified immunity as to the constitutional claims alleged in Counts III and IV. Those counts will therefore be dismissed.

### B.      State Law Claims

The remaining Counts I and II, allege the common law torts of malicious prosecution and conversion, respectively. These actions are founded solely on state law. Although closely allied factually with the constitutional claims, Plaintiff is correct in her contention that she has not had a full opportunity for discovery on these counts.

After the dismissal of Counts III and IV, there are no remaining claims over which the Court has original jurisdiction. The Court can therefore decline to exercise supplemental jurisdiction over the remaining state law claims as "there is no overriding interest in economy or convenience dictating that the federal court retain jurisdiction." *Patel v. Scotland Memorial Hosp.*, No. 95-2704, 1996-2 Trade Cas. (CCH) ¶ 71,469 (4th Cir. July 10, 1996) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  Pursuant to 28 U.S.C. § 1367(c)(3), this Court will decline to exercise supplemental jurisdiction over Counts I and II.

This case was originally filed in the Circuit Court of Mecklenburg County and removed to this Court by the defendant.  The remaining state law claims will therefore be remanded back to state court.

### III. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment will be granted with respect to the constitutional claims.  Defendant's motion will be denied with respect to the state law claims of conversion and malicious prosecution, which will be remanded back to state court.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
Henry E. Hudson
United States District Judge

Entered this 5th day of September, 2006.
Richmond, Virginia